Bissell, P. J.
A judgment ought never to have been entered against the sureties on the bond. This matter is very easily demonstrated by a comparatively brief consideration of the terms of the instrument and of a few facts respecting the contract under which the brick was sold. There are many questions suggested by the record which if decided would necessarily call for the construction of a number of the provisions of the lien act of 1893. While this construction is requested and a good deal of argument directed to the propositions which would compel the consideration, we cannot easily imagine the necessity to consider them, though possibly there may be other suits pending in which a decision of some of these matters would be desirable. The act of 1893, however, has been repealed and a new act was passed in 1899. The later act, of course, contains many of the provisions of the act of 1893 as well as some additional ones, as the last legislature, like all others which have legislated on this question, has attempted to broaden the statute and enlarge the rights and further secure the interests of the material men and builders. We have already had occasion to animadvert on this species of legislation, but it may be wisest for the courts to construe the acts which the legislature has passed and not criticise the policy which has led to the enactments. The repeal, however, and the change in the act is a complete excuse for our refusal to consider any other questions than those which are absolutely indispensable to the determination of the present appeal. We shall therefore only consider those matters which we regard as vital, and which being determined adversely to the appellee, must reverse the judgment.
The statement shows the bond was executed by the Burleigh Building Company and the O’Donnells as sureties, on a condition in effect that the Burleigh Building Company should pay any judgment which should be legitimately *461 rendered against it and be declared to be a lien on the premises, provided the premises were then subject to the hen of the judgment. This is the legal effect of the condition. Manifestly then to entitle the Merchant Brick and Building Company to recover from the sureties, it must regularly and lawfully obtain a judgment against the Burleigh Building Company, and the evidence must warrant it, otherwise the sureties may not be held. If this be not true, it would follow that should the Merchant Brick and Building Company obtain a judgment against the Burleigh company without right or warrant, the sureties would still be bound and remediless because without the right to question the character of the judgment. This could never be for the rights of the sureties are to be measured by the terms of the contract into which they have entered, and unless their principal be legally held, no judgment can rightfully be entered against them. It remains then to determine the validity of this judgment against the Burleigh Building Company. We conclude there is no evidence in the record to justify it. By this we mean no evidence which warrants a personal judgment against the Burleigh Building Company. We do not refer to a decree of foreclosure legitimately entered against Mr. Burleigh, the antecedent owners and possibly the building company. This is true because the condition of the bond is that the Burleigh Building Company shall pay any judgment rendered against them and adjudged and decreed to be a lien on the premises. It therefore follows, there must be some judgment rendered against the building company for the value of the materials sold and delivered which the company is bound to pay, and this judgment must likewise be declared a lien on the premises. We are quite ready to concede a bond might have been drawn containing a condition that if the lien should be established against the property and whatever interests the Burleigh company acquired by the transfer of April 22, then, and in such event, the sureties should be liable. This was not the bond, however, and such is not its condition. Its condition is to pay any judgment rendered against the com *462 pany in the suit which can only mean a money judgment which the Burleigh Building Company is bound to pay, and for which the sureties must respond. Under these circumstances in order to establish a liability against the O’Donnells it is incumbent on the plaintiff to prove facts entitling it to a personal judgment against the Burleigh Building Company for that money. This it wholly failed to do. Referring to the statement, it shows the property was owned by Henry J. Burleigh on the 1st of April, at the time Burleigh and Snell talked with the appellee about the sale of brick. If any contract was made, it was made then and made with those parties only. In it the Burleigh 'Building Company had no interest, nor so far as the record shows had they then any title to, or interest in, the property. Under these circumstances the corporation was in no manner bound by the contract of purchase, nor did the fact that this corporation ultimately became the purchaser of the property or the holder of the title bind them to pay for the brick which had been delivered prior to the 22d day of April, nor was it bound for the 13,000 brick thereafter delivered unless it was made to appear the company accepted the brick and appropriated it for the purpose of the building. This was not established. No evidence was introduced to show the Burleigh Building Company accepted or agreed to carry out or in any wise became bound by the original contract for the purchase of the brick made either with Burleigh or Snell or both. Under these circumstances there could be no personal judgment against the Burleigh Building Company for the brick delivered prior to the 22d day of April. As to the 13,000 brick thereafter delivered, there is nothing to show that the company received them, had any knowledge of them, became bound to pay for them, or under the terms of its purchase of the property from Henry J. Burleigh became obligated to pay for them. It may easily be, and I can readily conceive, the Burleigh Building Company took title under an agreement to assume these outstanding obligations. This concession, hoAvever, in no manner justifies the judgment. The *463 judgment must rest on evidence. The sureties have a right to insist the plaintiff shall prove his case, and failing to support it by competent and sufficient testimonj'- no judgment shall be entered against the principal by which they shall be concluded. We agree with them that the plaintiff made out no case which entitled it to a personal judgment against the Burleigh Building Company, and it therefore was not entitled to recover as against them. Doubtless on the subsequent trial counsel may be able to produce testimony which will obviate the difficulty. With this possibility we have no concern, simply determining that on the record as it stands, he was not entitled to judgment against the company and therefore he ought* not to have had judgment against the sureties.
There is another proposition to which we will advert as it will have a good deal of bearing on the subsequent trial. According to the statute if the brick was sold to Snell as a contractor, he was bound to file his lien within a fixed time and if a subcontractor within another fixed date, and in any event according to section 6, the lien could not hold the property more than four months after the completion of the structure or improvement unless an action should be commenced within that time to enforce it. By the provisions of section 3 a cessation of labor on any unfinished building is the equivalent of completion. We are quite unable to determine Snell’s connection or relation to the contract. The contract was a verbal one and the evidence does not disclose whether it was made with Burleigh or whether it was made with Snell or with both. If Snell was the original contractor and the Merchant Building and Brick Company was a subcontractor, this latter company was bound to file its lien within thirty days from the time the structure was completed. The structure would be legally completed by the cessation of labor for more than thirty days. The record shows the work stopped in May and nothing was done until after the lien'was filed and probably not until after the suit was commenced. When the structure was completed for the purposes of the act the Merchant Brick and Building Company was bound to file its lien *464 within thirty days thereafter, and bound also to begin suit within four months from the date of that completion. When the work ceased is therefore an important and pivotal inquiry. It will be remembered the original lien statement recited the work was completed and the labor ended on the 1st of June, and the complaint followed the lien statement. If both had been permitted to stand the plaintiff must necessarily have failed to recover because a suit was not begun until the 9th of November following, which was more than four months from the date of the alleged completion of the structure. To overcome this difficulty the plaintiff obtained leave to amend his complaint, setting up the completion of the structure on the 10th of June instead of the 1st. No objection was made to the entry of the order and the amendment was therefore properly made. Notwithstanding this fact, it is still insisted the parties are bound by terms of their lien statement. We agree with the trial court the law does not require that date to be inserted, and if put in, it is in no way conclusive on the lienor, and while it might be of some value as against his declarations, yet, it is not in the legal sense so far conclusive that he may not prove the actual time. We now come to what the record shows with reference to the work which was proven in order to take the case out of the operation of this provision which may be called a statute of limitation. The evidence was that the work ceased on the 1st of June. We imagine it stopped before, but it had certainly ended on that date unless what Mr. Merchant and the other witness testified to proves the work continued after that period. The evidence simply is, a person was seen at work on the building painting a cornice on the 10th of June for a portion of a day. Nothing else. This simple proof is relied on to remove the bar of the statute. We do not believe this evidence alone without more is enough. Questions of a similar character have arisen in other states under similar statutes and the general doctrine undoubtedly is, that the work relied on to remove the bar must be work in its ordinary progress on the building, carried on by the person obligated to perform it and done for and in *465 the interest of the owner who is putting it up. Without referring to a long line of authorities on the subject, vide Joost et al. v. Sullivan, 111 Cal. 286, Santa Clara Valley Mill & Lumber Co. v. Williams et al., 31 Pac. Rep. 1128, Association v. Harrison et al., 120 Pa. St. 28, and Sanford v. Post, 41 Conn. 617.
There are many cases which hold that it is not competent for mechanics by trivial work and trivial alterations to extend the time -within which the lien may be filed. This is the law in all states where such statutes exist. It would therefore follow, work of this sort established only by the evidence offered without more, would not be held to be a continuance of labor for lien purposes. The plaintiff declared in his lien statement that June 1 was the date when the building was completed. He likewise so pleaded it, and when he amended, inserting the 10th of June, it in no manner destroyed the force of the admission found in the statement and in the original pleading, and this cannot be overcome by the evidence which the case contains. The work had ceased and was completed on the 1st of June unless the little painting that was done on the cornice was done by the owner, the contractor, or in the interests of one or both of them and in the interest of the one and the execution of the contract by the other. How can we tell from this testimony who did the painting, for what purpose it was done, and in whose interest it was prosecuted? It may have been done by some person other than the contractor or by some person other than any contractor on the building, by some person other than the owner, or by some person who bore no relation to either. If this should turn out to be the fact counsel for the appellee would hardly contend it would operate to fix the point at which work ceased and the building was completed for the purposes of a lien statement. Unless on the subsequent trial the appellee is able to produce other evidence it must be found the work was finished on the 1st of June, the lien should have been filed on the 1st of July, the suit begun on the 1st of November, and that neither the lien was filed nor the suit *466 begun witbin the time necessary to save the material man’s rights.
There is another proposition to which we will refer, although it does not seem to have been much relied on by counsel. In the judgment entered there was a proviso that plaintiff’s attorney should have $50.00 attorney’s fees. The appellants insist this is not right because there was no evidence offered from which the valrfe of those services could be determined and on which it could be computed. We agree in that respect, and do not believe it is competent for the court to enter judgment for attorneys’ fees without some evidence to show the services performed and the value of what was done. There is a question beyond all this, and much more troublesome to the plaintiff, and which is the law in this jurisdiction until it shall be otherwise determined. There can be no judgment for attorneys’ fees under the law of 1893. We considered this question in a recent case, and held the act in this respect invalid. Los Angeles Gold Mining Co. v. Campbell, ante, p. 1.
We would not reverse the case on this ground because it would be very easy to reduce the judgment by that sum and affirm it as to the difference. Under our statutory authority this we should undoubtedly do were it not for the- other propositions which compel us to reverse the case.
For the reasons already given the judgment will be reversed and the cause sent back for further proceedings in conformity with this opinion.

Reversed.